**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| RAFAEL TORRES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cv-02737-TWP-DML |
| | ) | |
| STANLEY KNIGHT, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on *pro se* Petitioner Rafael Torres's ("Mr. Torres") Petition

for Writ of Habeas Corpus challenging a prison disciplinary proceeding identified as No. IYC 14-

02-0223 (Filing No. 1). For the reasons explained in this Entry, Mr. Torres' habeas petition must

be **denied**.

## I.    OVERVIEW

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,*

381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v.*

*Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process

requirement is satisfied with the issuance of advance written notice of the charges, a limited

opportunity to present evidence to an impartial decision-maker, a written statement articulating the

reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record"

to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985);

*Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir.

2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

## II.    THE DISCIPLINARY PROCEEDING

On October 15, 2016, Investigator P. Prulhiere wrote a Report of Conduct charging Mr.

Torres with conspiring to traffic.  The Report of Conduct states:

> On February 15, 2016 at approximately 8:00 am, I, Investigator P. Prulhiere, completed an investigation of Offender Rafael Torres 144059 for attempted/conspiring to traffic contraband into Plainfield Correctional Facility. Due to the evidence I have collected, I have found sufficient evidence to charge Offender Torres with this charge.

Filing No. 9-1 at 1.  The Report of Conduct also cited as evidence the Report of Investigation of

Incident ("incident report") for case number 16-IYC-0008, which set forth the basis for the charge

in detail:

> . . . As a result of my investigation as summarized in confidential Investigations Division Report number 16-IYC-0008, I have found several instances of physical evidence, recorded phone calls and collaborated interviews and tip information which show that Offender Torres has played an active role in trafficking scenarios at Plainfield Correctional Facility. During the investigation, I was able to substantiate that Offender Torres has in his use or possession not less than 4 cell phones since September of 2015. . . .  The method of investigation for these cell phones is explained in detail in Investigation Division Case Number 16-IYC-0008 as well as how these phones connect to other offenders Offender Torres was conspiring with. On December 18, 2015, an assault was reported on an offender suspected of having trafficking connections with Offender Torres in Housing Unit South F Unit. (Summarized in Investigation Division Case Number 16-IYC-0007.) It was on the day of Offender Torres' placement in Administrative Restrictive Housing that his association with the assaulted offender was confirmed and Offender Torres admitted that he was in fear that the same result would occur to him as did the assaulted offender.  On January 5, 2016, the Investigations Office received tip information that Offender Torres was keeping no less than 2 cell phones and drugs in cells L-6 and L-8.  When this information was available, a request was submitted to move Offender Torres away from the cell phones. Offender Torres attempted to refuse the move, but when confronted with the option of placement in Restricted Housing, made the statement regarding his affiliation with the offender who was assaulted on December 18, 2015 in F Unit.  Immediately after Offender Torres attempted to refuse his move, a search was conducted of the suspected cell of L6 and L8 where a total of 3 cell phones were retrieved. … On December 26, 2016, a trafficking event was attempting [sic] using the Plainfield Correctional Facility Visiting Room. (This incident was investigated in Investigation Division Case Number 15-IYC-0128.) As a result of that investigation, interview and tip information was substantiated regarding how the

scenario was arranged and who the primary individuals were who conspired to commit the act. On this date, a large amount of methamphetamine and synthetic marijuana were intercepted by Investigation Officers. Additionally, this intercepted trafficking scenario collaborated information gathered in the case of the assault that was committed in F Unit on December 17, 2015 (Investigation Division Case Number 16-IYC-0007) which was found to have been related to a similar trafficking scenario where the offenders who had committed the assault in F Unit were in dispute about the amount of drug that was supplied upon delivery by offenders working for Offender Torres and the assaulted offender in F Unit. . . .

Filing No. 9-2 at 1-2.

Mr. Torres was notified of the charge on February 26, 2016, when he received the Screening Report. He pled not guilty to the charge, requested Investigator Prulhiere as a witness to answer two specific questions, and requested as physical evidence the case files discussed in the incident report.

A hearing was held on March 18, 2016. Mr. Torres stated that he was not guilty and that "the reports do not specifically connect [him] to th[e] incident." (Filing No. 9-6 at 1.) Based on Mr. Torres' statement, the staff reports, witness statements, and the investigation report, the hearing officer found Mr. Torres guilty. The hearing officer recommended and approved sanctions including a one-hundred-eighty day earned-credit-time deprivation and a credit-class demotion.

Mr. Torres appealed to the Facility Head and the Indiana Department of Correction Final Reviewing Authority, but both of his appeals were denied. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### III.  ANALYSIS

Mr. Torres raises five issues in his habeas petition. The Respondent addresses the claims, arguing that each lack merit. Mr. Torres did not file a reply brief addressing the Respondent's arguments, and the time for him to do so has passed. The Court will address each of Mr. Torres' claims in turn.

## A.    Witnesses.

Mr. Torres requested Investigator Prulhiere as a witness, and Mr. Torres posed two questions he wanted Investigator Prulhiere to answer.  Specifically, he wanted to know what the other referenced cases, 15-IYC-0128 and 16-IYC-0007, had to do with his case and how they were all related to each other.  Investigator Prulhiere filled out a witness statement form, stating that all of the cases were summarized in the investigative report for this case, 16-IYC-0008, and were confidential.  *See* Filing No. 9-5 at 1.

Mr. Torres argues that he was denied due process because Investigator Prulhiere's statement was not signed by another correctional officer.  Respondent correctly replies, that there is no legal authority stating or suggesting that due process requires such witness statements to be signed by another correctional officer.  The witness statement provided is signed under the line stating, "The written statement is a true and accurate summary of my knowledge of the incident." (Filing No. 9-5 at 1.)  Due process does not require this statement to be signed by an additional officer.[1]

## B.    Impartial Decision-maker.

Mr. Torres argues that he was denied his right to an impartial decision-maker.  He is correct that due process provides an inmate in a disciplinary action the right to be heard before an impartial decision-maker.  *Hill*, 472 U.S. at 454.  For example, a prison official who is "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof," may not adjudicate those charges.  *Piggie*, 342 F.3d at 667.  However,

---

[1] The Court notes that, in any event, the witness statement appears to be have been signed by another correctional officer; the Respondent, however, does not argue this, and as noted, due process does not require this.  The Court also notes that there has never been an explanation provided as to why Investigator Prulhiere did not testify live at the hearing, as is the presumption when an inmate requests a witness.  Mr. Torres, however, did not raise this as an issue, and thus the Court need not address it.

"[a]djudicators are entitled to a presumption of honesty and integrity," and "thus the constitutional standard for impermissible bias is high." *Id.* at 666.

Mr. Torres maintains that the hearing officer was partial because he violated another inmate's due process rights in a different disciplinary proceeding related to the underlying charges in this case and because he failed to thoroughly examine all of the evidence at the disciplinary hearing. But, even if Mr. Torres' allegations were true, this does not show that the hearing officer was biased in the manner contemplated by *Wolff* or *Piggie*. *Cf. Shroyer v. Cotton*, 80 Fed. Appx. 481, 485 (7th Cir. 2003) ("[U]nsupported allegations of vindictiveness on the part of the CAB do not overcome the presumption of honesty and integrity that CAB members are entitled to."). In other words, Mr. Torres' contentions do not show that the hearing officer was involved in the underlying proceedings or otherwise had a relationship or knowledge that would cause partiality in Mr. Torres' case. Accordingly, Mr. Torres is not entitled to habeas relief on this basis.

## C.     **Physical Evidence.**

Mr. Torres argues that he was denied the physical evidence he requested—specifically, the case files for 15-IYC-0128 and 16-IYC-0007 referenced in the incident report. Moreover, he says he was never given an explanation for why he could not have this evidence.

"[P]rocedural due process require[s] prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). In the prison disciplinary context, "the purpose of [this] rule is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilty, *see id.*, and it is material if disclosing it creates a "reasonable

probability" of a different result. *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). Moreover, "prison authorities who assert a security justification for nondisclosure [of exculpatory evidence] still have the burden of proving that their denial of requested evidence was not 'arbitrary or capricious.'" *Johnson v. Brown*, --- Fed. Appx. ----, 2017 WL 1040773, *2 (7th Cir. 2017) (quoting *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) ("*Piggie I*")).

Mr. Torres has failed to show that the withholding of the requested case files violated his constitutional rights. First, as explained by Investigator Prulhiere in his witness statement, the case files Mr. Torres wanted to view were confidential. The Respondent expanded on this in the Return to Order to Show Cause (Filing No. 9), explaining that it would jeopardize institutional security to permit Mr. Torres to view the case files. Specifically, the case files would reveal "Internal Affairs' investigative techniques, including how [Internal Affairs] learned of Torres's involvement, and what persons were a part of the investigation." (Filing No. 9 at 8.) The Court's review of the confidential materials confirms this justification. *See* (Filing No. 11-1); (Filing No. 11-2); (Filing No. 11-3.)

Second, "even when prison administrators have a valid justification for withholding video evidence, 'due process requires that the district court conduct an *in camera* review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson v. Brown*, --- Fed. Appx. ----, 2017 WL 1040773, *2 (7th Cir. 2017) (quoting *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003)). The Court has conducted this review, and agrees with the Respondent that the evidence is not exculpatory. Instead, the confidential case files provide substantial evidence of Mr. Torres' involvement with trafficking drugs.

For these reasons, Mr. Torres' due process rights were not violated when he was denied access to the confidential case files he sought.

**D.** **Written Basis for Decision.**

Mr. Torres contends that he was denied his right to be provided an adequate written basis for the hearing officer's decision. Specifically, he argues that the hearing officer's written statement that he considered all of the evidence is untrue because he could not have considered the case files requested by Mr. Torres, given that Mr. Torres was denied access to them.

"Due process requires that an inmate subject to disciplinary action is provided 'a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions.'" *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) (quoting *Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992)). The written statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* But "[o]rdinarily a mere conclusion that the prisoner is guilty will not satisfy this requirement." *Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987). The purpose of this requirement is to allow "a reviewing court . . . [to] determine whether the evidence before the committee was adequate to support its findings concerning the nature and gravity of the prisoner's misconduct." *Id.*

The written statement of decision by the hearing officer states that he considered "all evidence"; specifically, the staff reports, Mr. Torres' statement, witness evidence, and the investigation report in reaching his decision. (Filing No. 9-6 at 1.) Thus, Mr. Torres is simply incorrect that the written statement does not reflect that the hearing officer considered the relevant evidence.

But more to the point, although the written statement of decision was brief, it was sufficient to comport with due process. When a case is "particularly straightforward," the hearing officer need "only to set forth the evidentiary basis and reasoning for the decision." *Jemison v. Knight*, 244 Fed. Appx. 39, 42 (7th Cir. 2007); *see also Scruggs*, 485 F.3d at 941; *Saenz*, 811 F.2d at 1174.

Although the underlying charges were not necessarily straightforward, given that there was a relatively complex conspiracy, the hearing officer's decision was. He either could believe Mr. Torres' denial of involvement in the trafficking conspiracy, or credit the investigation report and other evidence that detailed his involvement. Given that the hearing officer found him guilty, he clearly chose the latter. Therefore, the hearing officer's simple statement regarding the evidence on which he relied in making his decision is sufficient. *See Jemison*, 244 Fed. Appx. at 42 (holding that the hearing officer's statement "that it relied on staff reports and [the inmate's] own statement at the hearing" was sufficient because the hearing officer "had only to weigh [the officer's] statement against [the inmate's]"); *see also Saenz*, 811 F.2d at 1174; *Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987). Accordingly, an adequate written statement was provided, and Mr. Torres is not entitled to habeas relief on this claim.

## D.    Sufficiency of the Evidence.

Lastly, Mr. Torres challenges the sufficiency of the evidence demonstrating his guilt. The "some evidence" standard applied to challenges regarding the sufficiency of the evidence is lenient, "requiring only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

Mr. Torres argues that there was insufficient evidence for several reasons, the primary of which is that there is no physical evidence supporting his guilt. But Mr. Torres' sufficiency claim is meritless. As noted above, the Court reviewed the investigative report and confidential case files submitted by the Respondent, (*see* Filing No. 11-1; Filing No. 11-2; Filing No. 11-3), and they

contain sufficient evidence of Mr. Torres' guilt. The hearing officer relied on these same reports in making his decision. Therefore, Mr. Torres is not entitled to habeas relief on this basis.

## IV.    CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Torres to the relief he seeks. Accordingly, Mr. Torres's Petition for Writ of Habeas Corpus (Filing No. 1) must be **DENIED** and the action **dismissed**.

Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 4/21/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Rafael Torres, #144059
Miami Correctional Facility
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, Indiana  46914

Andrea E. Rahman
Office of the Indiana Attorney General
andrea.rahman@atg.in.gov